NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERT D., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY,[1]  S.G., D.G., R.D., *Appellees.*

No. 1 CA-JV 14-0143
FILED 2-26-2015

Appeal from the Superior Court in Maricopa County
No.   JD 509108
The Honorable James P. Beene, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric K. Knobloch
*Counsel for Appellee, Department of Child Safety*

---

[1]      Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  *See* ARCAP 27.

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Randall M. Howe joined.

---

**D O W N I E**, Judge:

**¶1** Robert D. ("Father") appeals from the juvenile court's order terminating his parental rights. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[2]

**¶2** Father and Michelle G. ("Mother") are the parents of S.G., D.G., and R.D.[3] In February 2011, the children were removed from their parents' care and placed with their paternal grandparents after Mother tested positive for methamphetamine and marijuana upon giving birth to J.G.[4] DCS filed a dependency petition as to S.G., D.G., R.D., and J.G. The petition alleged the children were dependent as to Father due to neglect. The children were found dependent as to Father in April 2011.

**¶3** The initial case plan was for family reunification. DCS planned to offer Father numerous services, including drug testing, substance abuse treatment, couples' counseling, parent aide services, and visitation. However, in May of 2011, Father advised the DCS case manager of a three-month jail sentence he needed to serve for a DUI conviction. Father stated he would be turning himself in to serve his sentence "the next week." The case manager explained that if she were to make referrals for the planned services, they would close unsuccessfully because Father would be in custody. She and Father agreed to "hold off on services until after he served his time." However, the case manager went ahead and referred Father for drug testing.

---

[2] On appeal, "[w]e view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[3] Mother was initially a party to this appeal, but her appeal has since been dismissed. *See* Ariz. R.P. Juv. Ct. 106(G)(1).

[4] J.G. is not at issue in these proceedings. Father is not J.G.'s biological father.

**¶4** By July 2011, Father had yet to turn himself in to serve his jail term, despite the case manager urging him to do so. In January 2012, the court changed the case plan to severance and adoption.

**¶5** Father never turned himself in to serve his DUI sentence. Instead, he was arrested on an unrelated warrant in February 2012. Upon his release from jail, DCS made referrals for drug testing, substance abuse treatment, and parenting classes. DCS also urged Father to participate in couples counseling with Mother.

**¶6** A contested severance trial took place on six dates over seven months. The parties submitted written closing arguments, and the juvenile court issued its severance order in May 2014. The court terminated Father's parental rights on the grounds of abandonment, *see* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1), and nine months in out-of-home care, *see* A.R.S. § 8-533(B)(8)(a). The court also found termination to be in the children's best interests.

**¶7** Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶8** To terminate parental rights, the juvenile court must find at least one of the statutory factors enumerated in A.R.S. § 8-533(B) by clear and convincing evidence. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). The court must also find by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, 110 P.3d 1013, 1022 (2005).[5]

**¶9** Substantial evidence supports the termination order under A.R.S. § 8-533(B)(8)(a) (out-of-home placement for nine months or longer). Based on that determination, we need not address the additional ground for severance found by the juvenile court. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

---

[5] Father has not challenged the best interests finding, so we do not address it.

¶10  To justify severance under A.R.S. § 8-533(B)(8)(a), the court must find by clear and convincing evidence that the children have "been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order . . . and the parent has substantially neglected or willfully refused to remedy the circumstances that cause [the children] to be in an out-of-home placement." The court must also find that DCS "has made a diligent effort to provide appropriate reunification services." However, DCS is not required to "undertake rehabilitative measures that are futile." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 33-34, 971 P.2d 1046, 1053 (App. 1999).

¶11  It is undisputed that the children were in an out-of-home placement for more than nine months. Father, though, contends DCS denied him access to services until April 2012. He states he "repeatedly" told DCS that he intended to surrender to begin his jail sentence, but that "[a]s he made these statements often, and over twelve months, the Department should have known that [he] had no true intention to do so." Father argues:

> [Father] had issues with drug abuse and domestic violence. The Department was aware of his issues and claims that it intended to assist [Father] with those issues by offering him substance abuse assessment and treatment, counseling and parenting education. The Department did not provide those services to [Father] until April 2012, one year following the children's removal.

¶12  The juvenile court characterized Father's delay in serving his jail sentence as a "pattern of deception" and found his "unwillingness to serve his jail sentence directly and adversely affected [DCS's] ability to provide him with the necessary services." The court also found that, had DCS provided Father with services sooner, "the services would have been closed out once he began to serve his jail sentence." Substantial evidence supports these findings.

¶13  The case manager testified that Father knew he was required to serve his jail sentence before participating in substance abuse treatment, parent aide services, counseling, and visitation. The case manager spoke to Father on at least three occasions about the need to complete his jail sentence, and, each time, he stated he was going to turn himself in. Father admitted knowing he must complete his sentence before DCS would refer him for services and acknowledged making no effort to do so. Furthermore, Father admitted using alcohol and methamphetamine

regularly from the time the children were removed until his arrest in February 2012. And he concedes that, "[f]rom the initiation of urinalysis testing until February 2012, [he] sporadically participated in urinalysis testing." The juvenile court found that Father failed to drug test on 45 occasions between February 2011 and March 2012.

¶14        Under these circumstances, the juvenile court reasonably concluded that DCS made diligent efforts to provide Father with reunification services and that Father neglected to remedy the circumstances that caused the children to be in out-of-home placements. Although Father began complying with case plan requirements in 2012, the juvenile court could reasonably conclude that his "attempt to engage in the necessary services in the months preceding the termination hearing is insufficient to exempt him from termination of his rights to his children pursuant to A.R.S. § 8-533(B)(8)(a)." *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577, 869 P.2d 1224, 1230 (App. 1994) ("Leaving the window of opportunity for remediation open indefinitely is not necessary, nor do we think that it is in the child's or the parent's best interests."); *see also Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994) (DCS is not required to ensure a parent participates in services.).

## CONCLUSION

¶15        For the foregoing reasons, we affirm the order terminating Father's parental rights to S.G., D.G., and R.D.



Ruth A. Willingham · Clerk of the Court
FILED: ama